PAMELA R. SCRUGGS, PRO SE
1271 Washington Ave #463
San Leandro, Ca. 94577
Phone: (510) 999-2781
Email: rishell484@gmail.com

FILED
NOV 09 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA R. SCRUGGS<br><br>Plaintiff<br>v.<br><br>SAN MATEO COUNTY TRANSIT DISTRICT, AND DOES 1 THROUGH 20<br><br>Defendants | CASE NO.: C20-07909 RS<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR A JURY TRIAL** |

## INTRODUCTION

Plaintiff, Pamela Scruggs, a public sector employee, works as the Fare Revenue Manager in the Treasury Department, with the San Mateo County Transit District. The Plaintiff was subjected to a pattern and practice of harassment and disparate treatment based on her race, and retaliation for complaining of the unlawful workplace misconduct. The Plaintiff experienced adverse employment actions such as intentional interference with job performance, denial of training opportunities and a transfer, as well as unequal pay.

- 1 –
COMPLAINT FOR DAMAGES

The Plaintiff asserts the following causes of action: (1) race discrimination (disparate treatment) in violation of 42 U.S.C. § 2000(e), et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), and Government Code § 12940, et seq., the California Fair Employment and Housing Act ("FEHA"); (2) retaliation in violation Title VII, and FEHA; (3) failure to prevent discrimination and discrimination based on race in violation of FEHA; and (4) declaratory judgment; and (5) injunction.

Plaintiff brings this action against the above-named Defendant, and in support thereof alleges the following:

## JURISDICTION AND VENUE

1. The matters complained of occurred in San Mateo County, California. This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law arising under the laws of the United States. This court has jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a) which grants this court supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

## NATURE OF THIS ACTION

2. Plaintiff brings this employment discrimination action pursuant to 42 U.S.C. § 2000(e), et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), and Government Code § 12940, et seq., the California Fair Employment and Housing Act ("FEHA"). Plaintiff seeks injunctive and declaratory relief, compensatory damages, penalties, and interest, reasonable attorney's fees, and the cost of litigation.

//

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. The Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 8, 2018. On or about August 12, 2020, the EEOC issued the Plaintiff a Dismissal and Notice of Rights ("Right To Sue Letter").

## PARTIES

4. Plaintiff PAMELA R. SCRUGGS (hereafter "Plaintiff") is and was at all times relevant, a resident of Alameda County, California.

5. Defendant SAN MATEO COUNTY TRANSIT DISTRICT ("SMCTD" or "Defendant") is a governmental entity and the administrative body for the principal public transit and transportation programs in San Mateo County: SamTrans bus service, Redi-Wheels paratransit service, Caltrain commuter rail, and the San Mateo County Transportation Authority. Defendant's principal office is located at 1240 San Carlos Avenue, San Carlos, and San Mateo, County, California. The Defendant has more than 50 employees.

6. The true names and capacities of defendants named as DOEs 1 through 20, inclusive, are presently unknown to Plaintiff. Therefore, Plaintiff sues said defendants pursuant to Section 474 of the California Code of Civil Procedure. Federal Rule of Civil Procedure 15(c)(1)(C) governs amendments that change the party or naming of a party after the statute of limitations has run. Plaintiff will amend this complaint to set forth the true names and capacities of said defendants, when ascertained, and will establish the requirement to allow relation back for claims against DOE defendants. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

//

7. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each defendant named herein, was the agent and or employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and or employment.

## FACTUAL ALLEGATIONS

8. The Plaintiff is a female, over the age of 40. Plaintiff entered into an employment contract with Defendant in 2014 as a temporary Accountant. Plaintiff was hired in a permanent position in May 2016 and promoted to Fare Revenue Manager in July 2016. The Plaintiff reports to Connie Mobley-Ritter ("Mobley-Ritter"). In June 2017, Mobley-Ritter was promoted to the position of Director of Treasury. Mobley-Ritter reports to Defendant's Chief Financial Officer Derek Hansel ("Hansel").

9. Beginning in April 2017, the Plaintiff was denied the opportunity to participate in training at the APTA, ENO, and WTS conferences. Plaintiff was singled out by Hansel during a meeting with Hansel and other employees. Hansel described his alleged altruistic work with "underprivileged, under educated Black people." Hansel directed his remarks about "underprivileged and under educated Black people" to the Plaintiff. In August 2017, Hansel asked the Plaintiff if she was "on [her] way home to Oakland." The disparaging intent of the remark was not lost on the Plaintiff, who understood that Hansel was identifying Oakland as the city in which Black people belonged.

10. Beginning in February 2017, Mobley-Ritter told the Plaintiff she would help her find another job, despite the Plaintiff's repeated, regular, and consistent decline of the offer, and articulate statements to Mobley-Ritter that Plaintiff was not interested in seeking other employment.

11. In April 2018, the Plaintiff's co-worker told her that Mobley-Ritter told him that the Plaintiff spoke like she was from "West Oakland" and she was "ghetto."

12. In August 2018, Mobley-Ritter met with the Plaintiff (taking a walk off the business premises), and at that time Plaintiff told Mobley-Ritter that she heard from

another employee that Mobley-Ritter said the Plaintiff talked like she was from "West Oakland," and that the Plaintiff was "ghetto." Mobley-Ritter said that the co-worker who reported this to the Plaintiff, needed to mind his business. During the meeting, Mobley-Ritter told the Plaintiff that "People look at you and judge you and you will never move up. Your entire hair needs to be tamed…" The Plaintiff responded to Mobley-Ritter, that her statements showed discrimination. Mobley-Ritter told the Plaintiff she could transfer out of her department. After this meeting, the Plaintiff emailed Mobley-Ritter and described the racialized and discriminatory comment that Mobley-Ritter made to her.

13. In August 2018, Mobley-Ritter and the co-worker that told the Plaintiff what Mobley-Ritter said about the Plaintiff, stated to her that Hansel wanted to know why people did not like her, and that the co-worker and Mobley-Ritter were trying to convince people that the Plaintiff was not "dumb."

14. Beginning the late summer of 2018, Mobley-Ritter began to withhold staff resources, and miscommunicate the Defendant's objectives and goals in order to misdirect and mislead the Plaintiff so as to be able to claim the Plaintiff was underperforming, unqualified, and incompetent to perform her job duties.

15. The Plaintiff complained to Hansel repeatedly that Mobley-Ritter was disrespectful, retaliatory, hostile, subjecting her to disparate treatment and intentionally sabotaging her work.

16. Beginning in the fall of 2018, the Plaintiff observed that she had problems receiving emails, and emails she saved or did not delete were missing/deleted. The Plaintiff made a complaint concerning this and the workplace misconduct she was subjected to, including but not limited to the race related discrimination. She participated in an investigation. The Plaintiff was unable to produce a number of emails she had retained for the investigator; due to the email problems she had experienced.

//

17. The investigator told the Plaintiff that he concluded that Mobley-Ritter had engaged in workplace misconduct. The investigator found Mobley-Ritter to be untrustworthy.

18. The Plaintiff has performed her job duties and responsibilities without any record of performance deficiencies in the form of poor or subpar performance evaluations, reprimands, performance improvement plans, or demotion in position. Rather, the Plaintiff was stripped of staff (reporting to her) and required to prevent reduction in production and job performance. Additionally, Plaintiff was subjected to conflicting instructions, directions, and requirements in an attempt to prevent her successful job performance. The Plaintiff was intentionally undermined to sabotage her job performance.

19. On November 8, 2018, Plaintiff was subjected to workplace violence during a meeting with Mobley-Ritter and Defendant's Assistant Manager-Employee Relations Yumiko Maeda ("Maeda"). Mobley-Ritter repeatedly yelled at the Plaintiff, pointed her finger in the Plaintiff's face repeatedly, and stood over the sitting Plaintiff and while keeping a distance that was excessively close-invading personal space. Maeda did not intervene to stop or prevent harassment, intimidation, or require Mobley-Ritter to terminate the verbal altercation and verbal and physical intimidation of the Plaintiff. Maeda did not take any steps after the meeting to investigate the violation of workplace violence policies and protocols, nor prevent future workplace intimidation or workplace violence incidents involving the Plaintiff and Mobley-Ritter.

20. The Plaintiff learned that she was not compensated at the rate of Defendant's similarly situated mangers. In March 2018, the Plaintiff sought to correct this by appealing a salary reduction which was instituted by Mobley-Ritter, when Mobley-Ritter reduced the grade level of the Plaintiff's position. The Plaintiff completed the paperwork to appeal the effective reduction in compensation range. This paperwork required Mobley-Ritter's signature/approval before the Plaintiff's paperwork could be considered

by the appropriate level of Defendant's management. Mobley-Ritter delayed approving the Plaintiff's appeal paperwork, until after the due date. This meant the Plaintiff's appeal would not be considered.

21. By March 2019, Mobley-Ritter started telling the Plaintiff that Hansel wanted her out of SMCTD, and Mobley-Ritter was trying to help her. In and around that time, Mobley-Ritter added job duties to overwhelm the Plaintiff. The Plaintiff was assigned to write policies and procedures and rerun reports which she had no prior experience doing. Mobley-Ritter intentionally withheld vital information from the Plaintiff necessary for her to complete her job and tasks. The Defendant, by and through its agents, employees, and representatives engaged in intentional, negligent, malicious, egregious, and oppressive conduct, and thereby unreasonably interfered with Plaintiff's work performance.

22. The Plaintiff sustained economic and non-economic damages and will continue to sustain economic and non-economic damages as a direct and proximate result of the Defendant's unlawful conduct, and that of its agents, employees, and representatives.

**FIRST CLAIM FOR RELIEF**
[Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]

23. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 22 above. The Defendant discriminated against the Plaintiff who was perceived as having "untamed hair," being "ghetto," "dumb," and "talking like she was from West Oakland." Defendant discriminated against Plaintiff by treating her differently than other similarly situated managers who are not Black in the terms, conditions, and privileges of her employment and compensation. Defendant discriminated against the Plaintiff by denying her training opportunities which were afforded to other non-Black employees. The Defendant discriminated against her by not

giving her access to the staffing resources she needed to perform her job duties, and later changing her job duties.

24. Plaintiff's race, color was the determining factor and/or a motivating factor in Defendant's adverse employment action. The Defendant did not reduce the compensation range of non-Black managers. The Defendant did not withhold staffing resources from non-Black managers. The Defendant did not provide misinformation, misdirection, and intentionally miscommunicate directives, instructions, and project/assignment requirements with other non-Black managers.

25. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

26. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race, color.

27. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

**SECOND CLAIM FOR RELIEF**
**[Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)]**

28. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 27, above.

29. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

30. Plaintiff engaged in protected activity by making numerous complaints to Defendant's employees about Defendant's employment practices that required Plaintiff, as a term and condition of her employment, to perform duties in a hostile work environment which was racially charged. Plaintiff participated in a workplace investigation into her complaints of unlawful race discrimination.

31. As a result of Plaintiff's complaints, Defendant, and its employees took materially adverse actions against Plaintiff, including, but not limited to, referring to her as "ghetto" and describing her as speaking as though she were from a community which is deemed unacceptable because is perceived to be part of the Bay Area with one of the highest concentrations of Black people, manufacturing false performance records, mischaracterizing the results of a workplace investigation, intimidation tactics, reducing her compensation range, displaying aggressive behavior towards her in front of human resources staff, singling her out when discussing race related activities of the Chief Financial Officer, and informing her that she lacked the potential for advancement because of her "untamed hair" as a Black woman, and her attire.

32. Defendants' and their employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII. The Defendant did not subject its employees who did not engage in protected activity to a withholding of staffing resources necessary to perform job duties, reduce compensation ranges, deny training, and denial of transfer.

33. The Plaintiff suffered adverse employment action, including but not limited to, intentional delay of processing her appeal for review of the Defendant's reduction in her compensation range, so as to prevent the Plaintiff from challenging the Defendant's reduction in her compensation range.

34. Defendant's' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

35. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

### THIRD CLAIM FOR RELIEF
**[Racial Discrimination in Violation of the FEHA, Cal. Gov't Code § 12940(a) ]**

36. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 35 above.

37. The FEHA makes it unlawful "[f]or an employer, because of the . . . race, color . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

38. Defendant discriminated against Plaintiff on the basis of her race, color, Black when she was told by Defendant's agent, that she would not advance with her untamed hair, she talked like she was from West Oakland, and she was "ghetto."

39. The Plaintiff was not paid at the same compensation level as similarly situated managers and did not receive necessary assistance to appeal the Defendant's discriminatory pay rate.  The Plaintiff was not provided the staff resources to perform her job duties, while other non-Black managers were given the staff resources necessary to successfully perform their job duties.  The Plaintiff was denied training opportunities. The Defendant changed the terms, conditions, and privileges of the Plaintiff's job.

40. Plaintiff's race, color was the determining factor and/or a motivating factor in Defendant's adverse employment actions.  The Defendant did not subject its employees

who did not engage in protected activity to a withholding of staffing resources necessary to perform job duties, reduce compensation ranges, deny training, and denial of transfer.

41. The Defendant did not reduce the compensation range of non-Black managers. The Defendant did not withhold staffing resources from non-Black managers. The Defendant did not provide misinformation, misdirection, and intentionally miscommunicate directives, instructions, and project/assignment requirements with other non-Black managers.

42. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

43. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race, color.

44. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

## FOURTH CLAIM FOR RELIEF
[Retaliation in Violation of the FEHA, Cal. Gov't Code § 12940(h)]

45. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 44 above.

46. It is unlawful under the FEHA "[f]or any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). **Gov't Code § 12940(a)**

//

47. Plaintiff engaged in protected activity by making numerous complaints to Defendant's employees about Defendant's employment practices that required Plaintiff, as a term and condition of her employment, to perform duties in a hostile work environment which was racially charged. Plaintiff participated in a workplace investigation into her complaints of unlawful race discrimination.

48. Plaintiff reasonably believed that this term and condition of her employment was unlawful.

49. As a result of Plaintiff's complaints, Defendant, and its employees took materially adverse actions against Plaintiff, including, but not limited to, referring to her as "ghetto" and describing her as speaking as though she were from a community which is deemed unacceptable because its majority population is Black, manufacturing false performance records, mischaracterizing the results of a workplace investigation, intimidation tactics, reducing her compensation range, displays of aggressive behavior towards her in front of human resources staff, and singling her out when discussing race related activities of the Chief Financial Officer, and informing her that her potential for advancement was directly tied to her untamed hair as a Black woman, and her attire.

50. Defendants' and their employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.  The Defendant did not subject its employees who did not engage in protected activity to a withholding of staffing resources necessary to perform job duties, reduce compensation ranges, deny training, and denial of transfer.

51. As a direct, legal and proximate result of the retaliation Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

52. Defendant's' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

53. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## FIFTH CLAIM FOR RELIEF
### [Failure to Prevent Discrimination and Harassment in Violation of the FEHA, Cal. Gov't Code § 12940(k)]

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 52 above.

55. Under the FEHA, it is unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). The Defendant's duty to prevent harassment and discrimination is affirmative and mandatory. Retaliation is a form of discrimination actionable under Government Code section, 12940, subdivision (k). (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240, disapproved on other grounds in *Jones v. The Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158.)

56. Defendant, its agents, and/or employees failed to take all reasonable steps necessary to prevent retaliation, discrimination, and a hostile work environment based on race, color, including, but not limited to, failure to investigate the workplace violence Plaintiff was subjected at the hands of Mobley-Ritter in the presence of the Defendant's Human Resources staff. Defendant failed to stop, prevent, and or correct discriminatory practices, including but not limited to the retaliatory conduct Plaintiff was subjected to which resulted in adverse changes to the terms, conditions, and privileges of Plaintiff's employment.

57. Defendant participated in maintaining a discriminatory and hostile work environment. Defendant failed to effectively investigate, stop, correct, or prevent the discriminatory practices and related conditions, even after Plaintiff complained of such matters.

58. As a direct, legal and proximate result of Defendant's failure to take all reasonable steps necessary to prevent discrimination and harassment from occurring,

59. Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

60. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation, discrimination, and a hostile work environment based on race, color.

61. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## DECLARATORY RELIEF ALLEGATIONS

62. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated her rights under Title VII, and the FEHA. Plaintiff is informed and believes and thereon alleges that the Defendants deny these allegations. Plaintiff requests judicial declaration that the conduct complained of violated her state and federal rights to work in a workplace free of unlawful discrimination.

## INJUNCTIVE RELIEF ALLEGATIONS

63. The Plaintiff is presently and continuously injured by the Defendant. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs alleged herein. If not enjoined by this Court, the Defendant will continue to violate the Plaintiff's rights. Damages are presently unascertainable and would not fully redress any harm suffered by the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment against Defendant as follows:

1. Declaratory judgment that the practices and conduct complained of herein are unlawful and violate 42 U.S.C. § 2000e, et seq, 29 U.S.C. § 621 et seq., and the California Fair Employment and Housing Act (FEHA);

2. Permanent injunction against Defendant from engaging in policies, practices, patterns, and future acts of discrimination, harassment, and retaliation against Plaintiff by Defendant;

3. For general and compensatory damages according to proof;

4. For penalties pursuant to California Labor Code;

5. For punitive damages;

6. For interest accrued to date;

7. For pre judgment and post judgment interest;

8. For attorney fees and costs; and

9. For such other and further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action.

Dated: November 4, 2020

Respectfully Submitted,
PAMELA SCRUGGS

_____
Plaintiff Pamela R. Scruggs